UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BRONX 439 E. 135th STREET D.T. BUILDING CORP.,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 11-15855 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR
<u>DISGORGEMENT OF FEES</u>**

*A P P E A R A N C E S:*

FLAUM & ASSOCIATES, P.C.
*Attorneys for Debtor*
369 Lexington Avenue
Suite 1201
New York, NY 10017
By:    Neil R. Flaum, Esq.

WILLIAM K. HARRINGTON
*United States Trustee for Region 2*
201 Varick Street, Room 1006
New York, NY 10014
By:    Andrea B. Schwartz, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the *United States Trustee's Motion, Pursuant to 11 U.S.C. § 329, For Disgorgement* (the "Motion," ECF Doc. # 116). The Motion is supported by the Declaration of Andrea B. Schwartz (the "Schwartz Decl.," ECF Doc. # 117). Through the Motion, the United States Trustee (the "U.S. Trustee") seeks an order directing Flaum & Associates, P.C. ("F&A") to disgorge to the Debtor's principal Thomas Hemmerle, any and all compensation Mr. Hemmerle paid F&A in connection with this case. F&A, by and through its president Neil R.

1

Flaum, filed an affirmation in opposition (the "Opposition," ECF Doc. # 121). The Court held a hearing on December 12, 2013 (the "December 12 Hearing"). For the reasons below, the Court **GRANTS** the Motion. As the Court will describe, Mr. Flaum's representation of the Debtor was incompetent at best, and he failed to provide services to the Debtor with any reasonable value. Flaum also failed to obtain an order from the Court approving his retention. F&A is hereby **ORDERED** to return the entire $15,000 payment it received in connection with this case.

## I.  BACKGROUND

On December 23, 2011 (the "Petition Date"), the Debtor commenced this single-asset real estate case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (ECF Doc. # 1.) The Debtor owns a residential rental building located at 439 East 135th Street, Bronx, New York (the "Property"). No trustee or examiner was appointed. The Debtor continued to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On January 18, 2012, the Debtor filed an application to retain F&A as its counsel (the "Retention Application," ECF Doc. # 10). The Retention Application stated in part that F&A was willing to be retained by the Debtor and would bill at its normal hourly rates, which ranged from $125.00 per hour for paraprofessionals to $450.00 per hour for partners. It also stated that F&A had received an initial retainer of $10,000, "inclusive of the Proceeding[,]" which would be applied to fees and expenses. To support the Retention Application, the Debtor submitted an affirmation of Neil R. Flaum (the "Flaum Aff.," ECF Doc. # 10-1), the principal attorney on the case, in which Mr. Flaum affirmed under penalties of perjury that he had "advised the Debtor of [his] willingness to serve as its counsel under general retainer based on time and standard billing charges." (Flaum Aff. ¶ 7.) On April 27, 2012, the Debtor filed an amended application to

2

retain F&A (the "Amended Retention Application," ECF Doc. # 18), clarifying that Mr. Hemmerle had made the $10,000 retainer payment on behalf of the Debtor and that the payment was "exclusive of the filing fee and expenses," and would be applied against fees and expenses. The Amended Retention Application was supported by an amended affirmation of Mr. Flaum (the "Am. Flaum Aff.," ECF Doc. # 18-1) and the Affidavit of Thomas Hemmerle (ECF Doc. # 18-2). The Debtor never filed a notice of hearing for either the Retention Application or the Amended Retention Application, never presented an order for F&A's retention on notice to parties in interest, and never obtained an order authorizing the Debtor's retention of F&A. (*See* Schwartz Decl. ¶ 3.)

Over the course of this case, Mr. Flaum filed six versions of a disclosure statement and plan and was unable to obtain an order approving any of them for solicitation to creditors. (*See* ECF Doc. ## 24, 29, 51, 78, 86, 89.) On February 22, 2012, after Mr. Flaum's first two failed efforts to get a disclosure statement approved, New York Community Bank ("NYCB"), the holder of a security interest in the Property, filed a motion to dismiss the Debtor's case or convert it to a chapter 7 case (the "NYCB Motion," ECF Doc. # 49). At a hearing on July 9, 2013 (the "July 9 Hearing"), the Court indicated on the record that it would grant the NYCB Motion, but adjourned the motion to give the U.S. Trustee time to consider whether to recommend dismissal or conversion of the case. Also at the July 9 Hearing, the Court authorized the U.S. Trustee to conduct discovery under Bankruptcy Rule 2004, including taking the deposition of Mr. Hemmerle. Among other things, the purpose of the discovery was to obtain information regarding $35,000 in payments Mr. Hemmerle had purportedly made to professionals during the bankruptcy proceedings without permission of the Court, which were disclosed in the Fourth and Fifth Amended Disclosure Statements.

3

On August 12, 2013, the U.S. Trustee conducted a deposition of the Debtor, appearing through Mr. Hemmerle. (*See* Hemmerle Dep. Tr., attached as Ex. B to Schwartz Decl.)[1] During the deposition, Mr. Hemmerle testified that he understood that the Debtor was retaining F&A for a flat fee of $15,000 to handle the chapter 11 case, and not on an hourly rate basis. (Dep. Tr. 46:19–49:11.) Mr. Hemmerle denied that the description of the Debtor's fee arrangement contained in the F&A retention applications was accurate, testifying: "No. I had a flat fee arrangement with Mr. Flaum." (*Id*. at 66:4–14.) Mr. Hemmerle explained that he gave Mr. Flaum a check for $15,000: $10,000 as a retainer and $5,000 for filing fees and court costs. (*Id*. at 66:15–25.) Mr. Hemmerle stated generally that he did not understand various documents when he signed them; he trusted his lawyer and signed whatever he was told to sign. (*Id.* at 67:7–69:8, 70:17–71:9.) As to postpetition payments to professionals, Mr. Hemmerle explained that he personally made payments on behalf of the Debtor to accountants and other law firms for services separate from the bankruptcy proceeding, to establish that he was providing "new value" to the Debtor. As to the $35,000 figure listed in the Fourth and Fifth Amended Disclosure Statements, Mr. Hemmerle stated that he estimated that number, and it was an arbitrary figure. Finally, as to a Letter of Intent that was supposed to be attached to the Fifth Amended Disclosure Statement (but was not), Mr. Hemmerle testified that there was no Letter of Intent when Mr. Flaum filed the statement. He also testified that he never saw the black-lined version of the Fifth Disclosure Statement submitted to the Court—even though his "/s/" e-signature was affixed at the end.

Based on the Hemmerle deposition and prior proceedings in this case, the U.S. Trustee filed the Motion, seeking disgorgement of all funds paid to F&A in connection with

---

[1] References to the Hemmerle Deposition Transcript will be cited as Dep. Tr. [Citation]. References to transcripts of Court hearings will be cited as [Date] Tr. [Citation].

representation of the Debtor. The Court heard oral argument on December 12, 2013. Also on that date, the Court granted the NYCB Motion, and on December 20, 2013, an Order was entered dismissing the chapter 11 case (ECF Doc. # 122). The Court expressly reserved jurisdiction with respect to the disgorgement motion. (Dec. 12 Tr. 31:4–10.)

At the December 12 Hearing, Ms. Schwartz informed the Court of certain events that had taken place before the hearing. While not bearing on the Court's disposition of the Motion, the Court is deeply troubled by the facts disclosed by Ms. Schwartz's account. According to Ms. Schwartz, Mr. Hemmerle called Ms. Schwartz on December 9, 2013, requesting a meeting with her at the U.S. Trustee's office. (Dec. 12 Tr. 12:18–24.) Ms. Schwartz advised Mr. Flaum of Mr. Hemmerle's request and Mr. Flaum agreed that Ms. Schwartz could speak directly with Mr. Hemmerle. (*Id.* 12:23–13:3.) At the U.S. Trustee's office, Mr. Hemmerle told Ms. Schwartz that he agreed with the Motion and thanked the U.S. Trustee's office for their efforts.[2] (*Id.* 13:4–10.) According to Ms. Schwartz, Mr. Hemmerle also told her that in teleconferences with Mr. Flaum, "Mr. Flaum had suggested that if this motion was successful, then Mr. Flaum could write a check for Mr. Hemmerl[e] and Mr. Hemmerl[e] could then write a check back to Mr. Flaum." (*Id.* 13:11–14.) Mr. Hemmerle also told Ms. Schwartz that Mr. Flaum had admitted that he had not given Mr. Hemmerle the proper advice and that he would therefore pay Mr. Hemmerle the $5,600 identified by the U.S. Trustee as unauthorized postpetition payments. (*Id.* 13:21–25.)

Then, according to Ms. Schwartz, Mr. Hemmerle called her again on the day of the December 12 Hearing. (*Id.* 14:4–9.) In this conversation, Mr. Hemmerle told Ms. Schwartz "that he had subsequently spoken with Mr. Flaum and he wasn't now sure whether or not he had, in fact, understood Mr. Flaum correctly with the check writing communications and, in fact,

---

[2] Ms. Schwartz was joined during the meeting by her colleague Joseph Nadkarni, who was also present with her at the December 12 hearing. (*See* Dec. 12 Tr. 13:4–7.)

5

thought he had made a mistake . . . ." (*Id*. 14:4–9.) Mr. Hemmerle explained to Ms. Schwartz that he understood the gravity of his earlier comments to Ms. Schwratz and what that type of information could mean. (*Id*. 24:1–3.)

At the hearing, Mr. Flaum denied any knowledge about the conversations between Mr. Hemmerle and Ms. Schwartz, stating: "I certainly did not make the statement that Miss Schwartz alleges; okay? I don't believe that there's any basis for me to have made such a statement." (*Id*. 15:6–11.) Mr. Flaum also stated: "I categorically deny having any conversation with Mr. Hemmerle to the effect that he would return any monies to me. I never said it. I don't know where he got the idea from." (*Id*. 25:13–19.)

## II. DISCUSSION

### A. F&A Is Not Entitled to Any Compensation Because It Failed to Obtain a Court Order Approving Its Retention as Debtor's Counsel

Under the Bankruptcy Code, a debtor may retain professionals only with court approval, 11 U.S.C. § 327(a), and a debtor may only pay attorney's fees under section 330 or 331 of the Code after the court approves the attorney's retention. *See Lamie v. United States Trustee*, 540 U.S. 526, 529 (2004). "In the Second Circuit, there is a per se prohibition against compensating professionals for services rendered prior to a retention order." *In re CCT Commc'ns.,* No. 07-10210 (SMB), 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir. 1981)). "Enforcement of such a strict rule enables the court to examine any potential conflicts of interest that a professional may have prior to the rendering of services . . . . It also discourages volunteer services and maintains control of costs to the estate by avoiding payment for services which may not otherwise have been authorized." *In re Bennett Funding Grp., Inc.*, 213 B.R. 234, 242 (Bankr. N.D.N.Y. 1997) (citations omitted).

6

Here, despite filing the Retention Application and the Amended Retention Application, the Debtor never noticed these applications for a court hearing and never presented an order to the Court on notice to all parties. (*See* Schwartz Decl. ¶ 3.) Mr. Flaum has repeatedly suggested to the Court that the U.S. Trustee assumed responsibility for obtaining his firm's retention order. (*See Affirmation in Reply to Requests of the United States Trustee* ("Flaum Reply Aff.," ECF Doc. # 100) ¶ 2; July 9 Tr. 14:2–15:9; Opp. ¶ 4 (stating that Ms. Schwartz said she would take Mr. Flaum's application and "walk it through" and arguing that the U.S. Trustee should therefore be equitably estopped from objecting to F&A's retention).)[3] But the law is clear that the debtor "bears the burden of demonstrating that the professional he seeks to employ is qualified for the appointment." *Coan v. Hutter (In re Hutter)*, 215 B.R. 308, 313 (Bankr. D.Conn. 1997), *aff'd*, 40 F. App'x 640 (2002). Mr. Flaum's failure to obtain court approval for the Debtor's retention of F&A imposes a per se bar on F&A's ability to receive compensation for services rendered in this case.

Despite the *per se* bar, courts can retroactively approve retention of a debtor's professionals to an earlier date in limited circumstances by approving the retention *nunc pro tunc*. "*Nunc pro tunc* orders effectively subvert the *per se* rule, however, and therefore they are generally disfavored in this Circuit." *Bennett*, 213 B.R. at 242; *see also In re 245 Assocs., LLC*, 188 B.R. 743, 750 (1995) (stating that "the attorney faces a difficult hurdle" in obtaining *nunc pro tunc* approval). The Second Circuit established a two prong test for granting retention *nunc pro tunc*. "*Nunc pro tunc* retention should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances." *Cushman &*

---

[3] The Court seriously doubts the veracity of Mr. Flaum's statement, but the Court does not decide the Motion on this basis.

*Wakefield, Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship)*, 189 F.3d 86, 87–88 (2d Cir. 1999). "'Simple neglect' on the part of a debtor in failing to take timely action does not constitute the 'extraordinary circumstances' necessary to justify nunc pro tunc relief." *In re Aquatic Dev. Group, Inc.*, 352 F.3d 671, 679 (2d Cir. 2003) (quoting *Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1268 (10th Cir. 1991)). Factors considered under the "extraordinary circumstances" test include:

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*In re Keren Ltd. P'ship*, 225 B.R. 303, 307 (S.D.N.Y. 1998) (quoting *In re F/S Airlease II, Inc.*, 844 F.2d 99, 105-06 (3rd Cir. 1988)), *aff'd sub nom. Cushman*, 189 F.3d 86.

Here, nearly two years have passed since the petition date, and F&A has taken no steps since April 2012 to authorize its retention. (*See* Schwartz Decl. ¶ 3.) Mr. Flaum did not satisfy his burden merely by submitting the Retention Application to the U.S. Trustee. Rather, the burden of obtaining Court approval remained with the Debtor and F&A, and the U.S. Trustee's alleged failure to act on Mr. Flaum's behalf does not constitute extraordinary circumstances warranting *nunc pro tunc* approval. This case is distinguishable from *CCT Commc'ns.*, 2010 WL 3386947, at *6, where Judge Bernstein found the *Keren* standards satisfied when the U.S. Trustee lost a retention order it had been sent by the debtor's counsel. In that case, counsel promptly contacted the U.S. Trustee's office when it noticed that the retention order had not been signed. *CCT Commc'ns.*, 2010 WL 3386947, at *6. The U.S. Trustee informed counsel that the order had been lost, counsel sent the U.S. Trustee another copy, the U.S. Trustee eventually indicated its "no objection," and the court entered the order approving counsel's retention, all within six months of the petition date. *Id.* Judge Bernstein found that the delay in execution of

8

the order was due to circumstances beyond the debtor's counsel's control, and that extraordinary circumstances therefore existed warranting *nunc pro tunc* approval.

Here, Mr. Flaum never made any effort to follow up with the U.S. Trustee regarding his retention applications. In fact, Mr. Flaum states in the Opposition that "had the Retention Application been promptly followed up, (clearly it is the fault of the undersigned [Mr. Flaum] that this did not happen) the U.S. Trustee would not have objected." (Opp. ¶ 21.) Even if Mr. Flaum believed that the U.S. Trustee had agreed to get his retention application approved, it was well within Mr. Flaum's control to inquire into the status of his application once he realized it had not been entered. Therefore, the Court finds that F&A has failed to demonstrate that extraordinary circumstances prevented it from obtaining a retention order.[4] For these reasons, the Court will not approve F&A's retention *nunc pro tunc*, and F&A is not entitled to compensation for any services rendered on the Debtor's behalf.

### B. Disgorgement of Fees Is Proper Because F&A Did Not Provide Any Reasonable Services to the Debtor

Even if F&A had been properly retained by the Debtor, full disgorgement of any fees paid to F&A would be proper under Bankruptcy Code section 329(b) because F&A failed to provide services to the Debtor with any reasonable value. *See* 11 U.S.C. § 329(b). Section 329 of the Bankruptcy Code "authorizes the Court to determine the reasonableness of compensation

---

[4] Some courts in this circuit have applied a less demanding "excusable neglect" or "unavoidable hardship" standard as the second prong of the *nunc pro tunc* test, in place of the "extraordinary circumstances" requirement. *See, e.g., In re Stylianou*, No. 01-16121 (AJG), 2010 WL 3719303, at *3 (Bankr. S.D.N.Y. Sept. 15, 2010); *245 Assocs.*, 188 B.R. at 750–51. The Supreme Court has defined excusable neglect in the context of late filed proofs of claims to include "inadvertence, mistake, or carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993). Courts applying this standard to *nunc pro tunc* retention applications consider factors including "[1] the danger of prejudice to the debtor, [2] the length of the delay, including whether it was within the reasonable control of the movant, and [3] whether the movant acted in good faith." *Stylianou*, 2010 WL 3719303, at *3 (quoting *Hutter*, 215 B.R. at 315) (alteration in original). Even if this Court were to apply the less stringent "excusable neglect" standard to F&A's request for *nunc pro tunc* retention, the Court would reach the same result. As already explained, F&A waited until the motion for disgorgement was filed to request *nunc pro tunc* approval of its retention even though it was fully within F&A's control to seek approval of its retention at any point during the case. The Court therefore finds that F&A's failure to obtain approval of its retention prior to the Motion was not the result of excusable neglect.

and the source of such compensation paid to the debtor's attorney for representing the interests of a debtor in connection with a bankruptcy case." *In re Glemaud*, No. 11-31697, 2013 WL 4498677, at *5 (Bankr. D. Conn. Aug. 21, 2013). As implemented by Bankruptcy Rule 2016, section 329(a) requires that attorneys file a statement disclosing "the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation" within 14 days of the order for relief. 11 U.S.C. § 329(a); FED. R. BANKR. P. 2016(b). Under section 329(b), "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive . . . ." 11 U.S.C. § 329(b).

Ultimately, it is for the court to decide whether compensation is reasonable under section 329(b). *See Glemaud,* 2013 WL 4498677, at *5. "What constitutes reasonableness is a question of fact to be determined by the particular circumstances of each case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." 3 COLLIER ON BANKRUPTCY ¶ 329.04[1] (16th ed. rev. 2013); *see also Lindo v. Figeroux & Assocs. (In re Lindo)*, No. 10-13717, Adv. Pro. No. 11-02755 (SMB), 2013 WL 5188025, at *12 (Bankr. S.D.N.Y. Sept. 16, 2013) (finding that attorney had committed malpractice and holding that the debtor was entitled to recover his entire retainer because the attorney's "services were rendered in such a negligent manner that they had no reasonable value"). "In reviewing an attorney's fee to determine whether it is reasonable under the circumstances the Court must consider the nature of the services and the competence of the performance." *In re Grant*, 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981) (finding that attorney was not entitled to retain any of the fees he received from the debtor due to flagrant inattention to his

client's affairs). On its face, section 329 applies to any "payment or agreement . . . made after one year before the date of the filing of the petition . . . ." 11 U.S.C. § 329(a). Because Mr. Hemmerle initially met with Mr. Flaum mere weeks before the Petition Date (*see* Dep. Tr. 47:8–14), the entirety of Mr. Hemmerle's payment to Mr. Flaum is subject to potential disgorgement.

Here, the Court finds Mr. Flaum's services on behalf of the Debtor so inadequate as to have no reasonable value. The record is replete with examples of Mr. Flaum's carelessness, ineptitude, and disregard of the Bankruptcy Code and Rules.

*1. F&A's Inability to Submit an Acceptable Disclosure Statement and Plan*

This single asset real estate case was filed on December 23, 2011, and languished before the Court for nearly two years, until the Court entered an order dismissing the case on December 20, 2013. The case did not involve any complex legal or factual disputes, nor did it include a multitude of interested parties. The sole reason this case lasted as long as it did—only to be dismissed by the Court—was because of F&A's inability to submit an acceptable disclosure statement and plan to the Court. Mr. Flaum filed six versions of a disclosure statement (ECF Doc. ## 24, 29, 51, 78, 86, 89) and was unable to obtain an order approving any of them. The Court was patient with Mr. Flaum—to a point—granting him multiple opportunities to address inadequacies and inconsistencies contained in the disclosure statements he submitted.[5] But time and time again, Mr. Flaum returned to Court having failed to address those issues. (*See, e.g.*, Order Denying Motion to Approve Fourth Amended Disclosure Statement, ECF Doc. # 87 at 1 ("Once again, Debtor's counsel has failed to fix many of the shortcomings appearing in the earlier drafts of the disclosure statement, and, if anything, counsel has added new problems.").) As previously stated by the Court, "[i]t is not a function of the Court to write a disclosure

---

[5] The Court was patient with Mr. Flaum out of concern for his client. (*See, e.g.* June 10 Tr. 23:6–13 ("There will be no further chances. I wasn't even going to allow another chance, but I don't want to see a client hurt because their attorney can't get the basics.").)

11

statement in plain English, with full sentences, in a way that explains the most basic aspects of the proposed plan and creditor distributions. The responsibility belongs to Debtor's counsel and he has so far shown himself incapable of doing what is required." (*Id.* at 2.)

When the Court denied approval of the Fourth Amended Disclosure Statement, the Court explained that it was left with few options, and gave Mr. Flaum one last chance to file an acceptable plan and disclosure statement before converting or dismissing the case. (*See id.* at 4–5.) But the Court noted that F&A appeared to be "incapable of drafting a disclosure statement worthy of being sent to creditors for solicitation of votes in support of a plan." (*Id.* at 4.) Problems with the Fourth Amended Disclosure Statement included that it contained (1) numerous blanks that had not been filled in; (2) many typographical errors; and (3) numerous inconsistencies, representing at one point that the mortgagee was not impaired and at another point that the mortgagee was impaired and entitled to vote. It also contained errors evidencing a lack of understanding of even basic bankruptcy law. For example, priority tax claims under section 507(a)(8) continued to be classified, even though under section 1123(a)(1) those claims are not classified, and despite the fact that Mr. Flaum had previously been advised of that error.

At the hearing on the Fifth Amended Disclosure Statement and Plan, the Court noted that Mr. Flaum had filed a plan that was still full of typos and that had not been amended to conform with changes to the disclosure statement.[6] (July 9 Tr. 8:13–17.) The Court expressed skepticism whether Mr. Flaum had even checked to see whether the plan had picked up changes he made in the disclosure statement. (*Id.* 9:4–11.) The Court denied the motion to approve the Fifth Amended Disclosure Statement, stating that it appeared "that the debtor, as currently

---

[6]    Additionally, only black-lined versions of the Fifth Amended Disclosure Statement and Plan were filed with the Court. (ECF Doc. ## 89, 90).

12

represented by counsel, is incapable of proposing a plan that is confirmable at any time in the reasonably foreseeable future." (*Id.* 28:16–29:1.)

      *2. F&A's Misrepresentations to the Court*

Aside from his inability to get a disclosure statement and plan approved, Mr. Flaum has throughout this case demonstrated what could at best be described as gross inattention to his client and disregard for the Bankruptcy Code and Rules. For example, both the Fourth and Fifth Amended Disclosure Statements contained at paragraph 48 a disclosure that Mr. Hemmerle had made postpetition payments to professionals in the amount of $35,000. At both the June 10 and July 9 Hearings, Mr. Flaum was unable to provide the Court with any detail about those disclosures. (June 10 Tr. 23:4–5; July 9 Tr. 10:20–11:21.) At his deposition, Mr. Hemmerle acknowledged that this figure was "arbitrary" and not "an actual dollar amount," a "check written" or reflective of a "cash contribution" that Mr. Hemmerle made. (Dep. Tr. 109:8–112:2.) At the December 12 Hearing, Mr. Flaum acknowledged that he had looked into the $35,000 figure following the earlier hearings and had concluded that it was a misstatement. (Dec. 12 Tr. 18:7–19:6.) It is plain to the Court that Mr. Flaum filed a disclosure statement twice without conducting a reasonable inquiry of the underlying facts. Mr. Flaum also failed to timely inform the Court that he had filed documents containing false statements.

Further, although the Fifth Amended Disclosure Statement indicated that a Letter of Intent of a re-financing proposal was annexed, Mr. Hemmerle testified at his deposition that: (1) he never saw the black-lined version that Mr. Flaum filed with the Court containing a conformed copy of Mr. Hemmerle's signature, and (2) the reference to a Letter of Intent was inaccurate because he never had a Letter of Intent. (Dep. Tr. 114:6–116:11.) In fact, Mr. Hemmerle acknowledged that he never understood the plan in this chapter 11 proceeding to contemplate re-

13

financing before confirmation. (*Id*.) Although not testifying, Mr. Flaum acknowledged at Mr. Hemmerle's deposition that he knew the Debtor had not received a Letter of Intent when he filed the Fifth Amended Disclosure Statement. (*Id*. 117:11–18.) But Mr. Flaum filed the disclosure statement nonetheless, with the expectation that the Debtor would receive a Letter of Intent by the hearing date. (July 9 Tr. 24:18–25:5.) Thus, Mr. Flaum knowingly filed a document with the Court that contained an inaccurate representation.

Mr. Flaum's practice of misrepresenting the status of the case continued through the December 12 Hearing on this Motion. In the Opposition, in a section entitled "Recent Developments," Mr. Flaum stated that he had helped the Debtor find a buyer for the Debtor's property and that he expected to have a signed contract before the December 12 Hearing. (Opp. ¶¶ 22–25.) When the hearing date arrived, there was no contract of sale. (Dec. 12 Tr. 2:15–18.) Much like with the Letter of Intent, Mr. Flaum explained that, once again, the contract was supposed to come in by that day but had never been received. (*Id*. 19:24–20:3.)

    *3. F&A's Failure to Conduct Reasonable Inquiries*

Mr. Hemmerle's payments to professionals during this case further evidence Mr. Flaum's incompetent representation. During his deposition, Mr. Hemmerle testified that he had made postpetition payments to professionals on behalf of the Debtor. (Dep. Tr. 81:17–23, 82:22–83:25, 84:24–85:10, 92:18–25; *see also* Motion at 12–15.) Mr. Hemmerle further testified that he listed these payments in the Debtor's monthly operating reports, which Mr. Flaum filed with the Court. (Dep. Tr. 94:11–20.) The Debtor's monthly operating reports list seventeen postpetition payments to professionals, totaling $5,682.00. (*See* Motion at 14–15.)

Mr. Flaum knew that it was improper for professional fees to be paid without Court approval. (July 9 Tr. 12:16–20.) As the Debtor's counsel, Mr. Flaum had a duty to inform his

14

client about the general obligations and limitations on debtors, including that professionals may not be paid without court order. Additionally, by filing the monthly operating reports, Mr. Flaum is considered to have signed them and, therefore, attest to their propriety. *See* General Order M-399 at 7 (stating that filing documents on the system constitutes the signature of the system account holder). Further, Mr. Flaum had a responsibility to review the monthly operating reports for compliance with the U.S. Trustee Chapter 11 Operating Guidelines and the Bankruptcy Code and Rules. Thus, he knew or should have known that the Debtor was making unauthorized payments, and he should have directed Mr. Hemmerle to cease doing so. But Mr. Hemmerle testified that F&A never contacted him regarding the information contained in the monthly operating reports. (Dep. Tr. at 94:11–20.) The Court rejects Mr. Flaum's attempt to evade this responsibility by arguing that an attorney is not required to audit his client's financials. This may be so, but even a perfunctory glance at the Debtor's monthly operating reports would have revealed the improper payments to professionals. Clearly, Mr. Flaum either failed to review the reports or failed to properly advise his client.

    *4.    F&A's Inaccurate Rule 2014 Disclosures*

As a final example of Mr. Flaum's incompetence in connection with this case, F&A's Bankruptcy Rule 2014 disclosures were inaccurate. Bankruptcy Rule 2014 regulates the application required to obtain an order approving employment under Bankruptcy Code section 327. *See* FED. R. BANK. P. 2014(a). Local Bankruptcy Rule 2014-1 requires that an application for the retention of a professional pursuant to section 327 or 328 "shall state the specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee, or contingent fee arrangement." In the context of conflicts of interest, "[t]he professional's duty to disclose is self-policing. The Court relies primarily on forthright

15

disclosure to determine qualification under section 327." *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) (citations omitted).

Here, both the Retention Application and the Amended Retention Application contain fee provisions that are inaccurate and inconsistent with Mr. Hemmerle's understanding of the terms of F&A's engagement by the Debtor and with the engagement letter signed by Mr. Hemmerle (the "Engagement Letter," attached as Ex. D to Schwartz Decl.). Paragraph 11 of each application states that F&A received "an initial retainer in the sum of $10,000.00" in connection with this case. But Mr. Hemmerle testified that he agreed to a flat fee arrangement with F&A, and that he had paid F&A $15,000: $10,000 as a retainer and $5,000 for filing fees and court costs. (*Id*. at 66:15–25.) By the terms of the Engagement Letter, the Debtor agreed to pay F&A an hourly rate only for services outside of general chapter 11 representation, to the extent the Debtor failed to list a creditor on its schedules.[7]

F&A's receipt of $15,000 from the Debtor was not disclosed in its retention applications or in Mr. Flaum's affidavits in support. Nevertheless, Mr. Flaum asserts that F&A properly disclosed this information because it was disclosed in the Debtor's Statement of Financial Affairs. (*See* Flaum Reply Aff. ¶ 5.) Mr. Flaum's assertion here is untenable. Bankruptcy Rule 2014 "is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court or other parties interest, and then the burden shifts to those entities to make inquiry in an effort to expand the disclosure." *In re Matco Elecs. Grp., Inc.*, 383 B.R. 848, 853–54 (Bankr. N.D.N.Y. 2008). The duty to disclose compensation arrangements lies with the professional seeking employment, and the Court should not have to search through files to find information bearing on the Debtor's

---

[7] The Engagement Letter contains its own inconsistencies. For example, the letter inexplicably refers to the Debtor as "Margo." The Engagement Letter also states that the Debtor agreed to pay F&A $10,000 as an initial retainer, and $15,000 for disbursements, which is clearly erroneous by all accounts.

16

engagement of that professional. *Granite Partners*, 219 B.R. at 35; *see also* 9 COLLIER ON BANKRUPTCY ¶ 2014.04 ("The fact that a disclosure was made elsewhere (e.g., in the debtor's schedules) is not likely to ameliorate a court's reaction to incomplete disclosure."). Here, Mr. Flaum was under a duty to accurately disclose to the Court the details of his engagement by the Debtor, and he failed to adequately do so.

### C.    F&A Is Not Entitled to Retain Any Money for Expenses

Mr. Flaum argues that F&A should be allowed to retain that portion of the retainer spent expenses during the case. Attached as "Schedule C" to the Opposition is a list of the disbursements for which F&A seeks reimbursement, totaling $2,586: (1) filing fee in the amount of $1,046; (2) copy charges at 25 cents/page in the amount of $1,320; and (3) parking fees in the amount of $220. Under Bankruptcy Code section 330(a)(1)(B), a professional employed under section 327 may be reimbursed for "actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B). As already explained, F&A never obtained a court order approving its retention and thus was never properly employed under section 327. Therefore, F&A is not entitled to reimbursement for any expenses.

Even if F&A had been properly retained as a professional under section 327, there are serious problems with its request for expense reimbursement. Expenses are deemed "'actual' when they are in fact incurred rather than based upon guesswork, formula or pro rata allocation, and when they are obviously attributable to a bankruptcy client." 3 COLLIER ON BANKRUPTCY ¶ 330.04[1]. Expenses are "'necessary' when incurred if they were properly required to accomplish the task for which the professional was employed." *Id*. "The same factors enumerated in section 330(a)(3) for the reasonableness of compensation for services are also applicable to the reimbursement of expenses." *In re Borders Group, Inc.*, 456 B.R. 195, 203

17

(Bankr. S.D.N.Y. 2011); *see also* 3 COLLIER ON BANKRUPTCY ¶ 330.04[1]; 11 U.S.C. § 330(a)(3)(A)–(F). "Other courts have applied a slightly different test, considering whether the expense was 'incurred because it was required to accomplish the proper representation of the client.'" *Id*. (quoting *In re Am. Preferred Prescription, Inc.*, 218 B.R. 680, 686–87 (Bankr. E.D.N.Y.1998)). "In any event, the burden of establishing entitlement to expenses falls on the applicant." *Id*.

Based upon the Court's findings in relation to services performed by F&A, the Court has trouble concluding that any of the expenses incurred by F&A contributed to the proper representation of the Debtor or to accomplishing the task for which F&A was employed—successful navigation of a chapter 11 proceeding. While Mr. Flaum was able to file a petition initiating these proceedings, that is about the only thing he did right. The Court is not convinced that the Debtor actually benefitted at all from the bankruptcy process, especially in light of the dismissal of the case. In fact, the Debtor may actually have been prejudiced due to the pendency of these proceedings. Mr. Hemmerle testified at his deposition that the Debtor was unable to refinance its loan partly because it was in chapter 11. (*See* Dep. Tr. 114:23–115:8.)

Further, professionals seeking reimbursement for expenses must comply with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases provided in General Order M-447, which supersedes General Order M-389. General Order M-447 provides "clear and concise procedures for compensation and reimbursement expenses." *See* General Order M-447. General Order M-447 contains the Court's own guidelines regarding disbursements and establishes a maximum of $.10 per page for photocopies (or cost, whichever amount is lower). Mr. Flaum seeks reimbursement for photocopies at $.25 per page, displaying further blatant disregard, or ignorance, of the rules of

this Court. At the December 12 Hearing, Mr. Flaum could not recall whether he had ever even looked at General Order M-447. (Dec. 12 Tr. 15:21–25.) The Court also notes that Mr. Flaum seeks reimbursement for over 5,000 pages of copies. Even without an explanation as to why so many photocopies were required in this case, it is clear to the Court that a significant amount of these copies were due to the submission of multiple disclosure statements and plans, necessitated solely as the result of Mr. Flaum's ineptitude. For all of these reasons, F&A is not entitled to reimbursement for any expenses incurred in this case.

### III. CONCLUSION

For all of the foregoing reasons, the Motion is **GRANTED**, and F&A is hereby **ORDERED** to disgorge any and all payments it received by or on behalf of Mr. Hemmerle or the Debtor within fourteen (14) days from the date of this Order. It is further **ORDERED** that Mr. Flaum shall thereafter file a certificate with the Court that he has repaid the funds, and that he has not sought and will not receive any further repayments by or on behalf of Mr. Hemmerle or the Debtor.

The Court notes that it is deeply troubled by Mr. Flaum's representation of the Debtor in this case. The statements by Ms. Schwartz at the December 12 Hearing regarding her conversations with Mr. Hemmerle are perhaps the most worrisome of all. In any event, it is unfortunate that the party who suffered the most here was Mr. Flaum's client.

**IT IS SO ORDERED.**

Dated:   January 17, 2014
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge

19